UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH ANN JEFFERSON,

               Plaintiff,                   CIVIL ACTION NO. 11-11937

               v.                       DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

###     A.    *Proceedings in this Court*

On May 2, 2011, Plaintiff filed this suit seeking judicial review of the Commissioner's

decision disallowing benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the

Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and

Supplemental Security Income benefits (Dkt. No. 3).  This matter is currently before the Court on

cross-motions for summary judgment (Dkt. Nos. 7, 10).

###     B.    *Administrative Proceedings*

Plaintiff filed her claim for benefits on June 18, 2006, alleging that she became unable to

work on November 30, 2003 (Tr. 17).  The claim was initially disapproved by the Commissioner

on September 26, 2006 (Tr. 17).  Plaintiff requested a hearing and, on September 9, 2008,

Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Paul R. Armstrong, who

considered the case *de novo*.  In a decision dated January 23, 2009, the ALJ found that Plaintiff

was not disabled (Tr. 14-23).  Plaintiff requested a review of this decision on February 24, 2009

(Tr. 11-13).  The ALJ's decision became the final decision of the Commissioner on February 24,

2011 when, after the review of additional exhibits[1] (AC-14F and 15F, Tr. ), the Appeals Council

denied Plaintiff's request for further review (Tr.321-328).

In light of the entire record in this case, this Court finds that substantial evidence supports

the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's

motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 50 years old on her alleged disability onset date (Tr. 21).  Plaintiff has past

relevant work as an office manager (Tr. 21).  The ALJ applied the five-step disability analysis to

Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful

activity since November 30, 2003, Plaintiff's alleged disability onset date (Tr. 19).  At step two,

the ALJ found that Plaintiff had the following "severe" impairments: residuals of cerebral infarct

or aneurysm.  *Id.*  At step three, the ALJ found no evidence that Plaintiff's combination of

impairments met or equaled one of the listings in the regulations (Tr. 19-20).  Between steps

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "a full range of simple, unskilled work at all exertional levels" (Tr. 20). At step four, the ALJ found that Plaintiff could not perform her previous work as an office manager (Tr. 21). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as laundry laborer (6,430 jobs), house cleaner (23,390 jobs) or dining room attendant (13,020 jobs) (Tr. 22).

### B. *Administrative Record*

#### 1. **Medical Evidence**

Plaintiff's brief did not attempt to summarize the medical evidence in her motion for summary judgment; the Commissioner accurately summarized the medical evidence in the record as follows:

In January 2005, Plaintiff underwent a CT scan of her head due to complaints of pain (Tr. 204-05). The scan showed aneurysmal clips near the sella; no intracranial bleeding, mass effect, or midline shift; new lacunar infarcts in the basal ganglia and thalamus; and periventricular deep white matter small vessel ischemic changes (Tr. 205).

In July and August 2005, Plaintiff presented to a staff member at Hurley Medical Center for treatment of conditions including a history of a cerebrovascular accident (CVA)[2] and an intracranial bleed; Plaintiff was prescribed medications (Tr. 211-12).

In February 2006, Plaintiff presented to a treatment provider at Hurley Medical Center for a check up; she reported feeling well with no complaints and stated that she was "still job hunting" (Tr. 241). Later that month, Plaintiff stated to a treatment provider at Hurley Medical Center that she was depressed and had been seeing her primary care physician (Tr. 252).

---

[2] A "stroke."

2:11-cv-11937-SFC-MAR   Doc # 12   Filed 03/09/12   Pg 4 of 17   Pg ID 394

In April 2006, Plaintiff presented to a doctor in follow-up to an abnormal mammogram; the doctor noted that she had short-term memory loss problems and minimal problems with recall, but that she was alert, oriented times three, and had grossly intact cranial nerves (Tr. 247). A treatment provider with Hurley Medical Center prepared a clinic summary in July 2006, and noted that, among other conditions, Plaintiff had secondary diagnoses of a CVA (Tr. 234). The staff member noted that Plaintiff did not have cognitive impairments, anxiety issues, or a diagnosed mental illness (Tr. 234).

In September 2006, limited licensed psychologist Carrie Neubecker, Psy.D., examined Plaintiff for the state DDS (Tr. 68). Plaintiff reported having a brain aneurysm in 1997 and a stroke in 2004 (Tr. 266). On IQ testing, Plaintiff had a verbal score of 87, a performance score of 68, and a full scale score of 71 (Tr. 266). Dr. Neubecker opined that although Plaintiff's full scale score was in the borderline range, her intelligence was best characterized by her verbal and performance scores (Tr. 267). Dr. Neubecker described Plaintiff's verbal score as being in the low average range and her performance score being in the extremely low range (Tr. 267). Dr. Neubecker opined that Plaintiff may have some difficulty holding information to perform a specific task and that her difficulties with working memory may cause problems in processing complex information (Tr. 267-68). Testing also showed low average working memory and significant impairment in visual motor coordination (Tr. 268).

Matthew Dickson, Ph.D., also examined Plaintiff for the state DDS (Tr. 269-72). Plaintiff described memory loss, an incident where she could not remember someone's address, and an incident where she forgot her mother's phone number (Tr. 269). Plaintiff denied ever receiving mental health treatment (Tr. 269). She stated that she got along "OK" with others and that she used to enjoy reading, but could no longer stay focused (Tr. 270). Plaintiff reported that

-4-

she could perform household chores, shop for groceries independently, pay bills, count money, and drive (Tr. 270).  Dr. Dickson noted that Plaintiff had an appropriate affect and normal mood, and appeared to have underlying anger (Tr. 270). Plaintiff reported having a very low self-esteem (Tr. 270).  Plaintiff was oriented to time, place, and person, and could recall six numbers forwards and four numbers backwards (Tr. 271).  Dr. Dickson diagnosed adjustment disorder with depressed mood, cognitive disorder, and borderline intellectual functioning, and opined that Plaintiff's psychological condition would "moderately" impair her ability to perform work-related functions and that her prognosis was guarded (Tr. 271).

Three days later, Dr. Gavin Awerbuch, a neurologist, performed an independent medical exam (Tr. 279).  Plaintiff reported that, following an aneurysm in 1997, she had "slower" thinking, and that following a stroke in 2004, she had trouble with short-term memory, comprehension, and recall (Tr. 279).  She stated that this was the major focus of her disability (Tr. 279).  Plaintiff stated that she also had developed "some depression" (Tr. 279).  Dr. Awerbuch opined that, from a physical standpoint, Plaintiff could perform work-related activities and that her primary complaints would be best addressed by a neuropsychologist (Tr. 279).

Later that month, Linda Brundage, Ed.D., reviewed Plaintiff's records for the state DDS and created a report (Tr. 282-83).  Dr. Brundage stated that Plaintiff had a cognitive disorder, adjustment disorder with depressed mood, and borderline intellectual functioning (Tr. 287, 289-90).  Dr. Brundage opined that Plaintiff had moderate limitations in activities of daily living; maintaining social functioning; and in concentration, persistence, or pace (Tr. 296).  Dr. Brundage further opined that Plaintiff was able to perform unskilled work and had moderate limitations in memory, concentration, social interaction, and adaptation secondary to adjustment

disorder and cognitive disorder (Tr. 284). Dr. Brundage ultimately concluded that Plaintiff

retained the "capacity to sustain simple repetitive work" (Tr. 284).

In November 2007, a doctor at Hurley Medical Center prescribed Plaintiff Prozac for

depression (Tr. 315). In July 2008, Plaintiff reported to a staff member at Hurley Medical Center

that she was not taking Prozac because she did not need it (Tr. 304). At this time, Plaintiff stated

that she had a good mood, was socially active, and had no suicidal thoughts (Tr. 304).

### 2.    Vocational Expert

At the hearing, the ALJ asked the a vocational expert (VE) a hypothetical question

regarding what work could be performed by a person who had no exertional limitations, but was

restricted to simple, unskilled work (Tr. 64). The VE testified that such a person could work as a

laundry laborer, house cleaner, and dining room attendant, with a total of 42,840 jobs in

Michigan (Tr. 64). The VE testified that if, due to difficulties with concentration, the person was

off task for 15 minutes every hour, no jobs could be performed by the hypothetical person (Tr.

64-65).

### C.    *Plaintiff's Claims of Error*

Plaintiff's overarching argument on appeal is that the ALJ erred by not discussing or

adopting certain medical findings from two state DDS physicians. Specifically, Plaintiff avers

that the ALJ should have found at step two – based on Dr. Dickson's evaluation – that Plaintiff's

severe impairments included depressed mood, cognitive disorder and borderline intellectual

functioning. Plaintiff also avers that the ALJ erred by not mentioning Dr. Brundage's assessment

that Plaintiff had moderate limitations in activities of daily living, maintaining social functioning

and in concentration, persistence and pace. As a result of these errors, Plaintiff contends the ALJ

formed an inaccurate hypothetical question and that the ALJ did not consider all of the listings

(at step three) that Plaintiff may have met or medically equaled. Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility.

## III.   DISCUSSION

### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the

-10-

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted earlier, Plaintiff's overarching claim on appeal is that the ALJ erred by not specifically discussing or adopting the opinions of two state DDS physicians – Drs. Dickson & Brundage. As a result of this error, Plaintiff then avers that the ALJ's overall analysis was flawed in several respects. Each of Plaintiff's specific arguments is addressed below:

### 1. The ALJ Did Not Err At Step Two

Plaintiff's first argument is that the ALJ erred at step two of the analysis by only recognizing Plaintiff's "residuals of cerebral infarct[3] or aneurysm" as severe impairments, and by not recognizing additional severe impairments – in particular, Plaintiff's adjustment disorder with depressed mood, cognitive disorder and borderline intellectual functioning (Pl.'s Br. at 7). Defendant responds that, under these circumstances, the failure to find an additional impairment severe is not reversible error, citing *Maziarz v. Sec'y of Health and Human Serv's*, 837 F.2d 240, 244 (6th Cir. 1987). Defendant is correct.

In *Maziarz*, the ALJ determined that the plaintiff suffered from several severe cardiac impairments. The plaintiff argued the ALJ erred by not finding a cervical condition to be a severe

---

[3] A cerebral infarct or infarction is an "ischemic condition of the brain, producing local tissue death and usually a persistent focal neurological deficit in the area of distribution of one of the cerebral arteries." Dorlands Illustrated Medical Dictionary, 948 (31st ed. 2007).

impairment at step two of the sequential evaluation process.  The *Maziarz* Court found it "unnecessary to decide" whether the ALJ erred in failing to find that the plaintiff's cervical condition constituted a severe impairment at step two, because the ALJ continued with the remaining steps of the sequential evaluation process and considered the plaintiff's cervical condition in determining whether he retained a sufficient RFC to allow him to perform substantial gainful activity.  Therefore, the Sixth Circuit concluded that any alleged error at step two was harmless.  Stated differently, the Sixth Circuit held that, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to specifically find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz*, 837 F.2d at 244; *see also, Swartz v. Barnhart*, 188 Fed. App'x. 361, 368 (6th Cir. 2006) (citing *Maziarz*).  Thus, the ALJ's failure in this case to specifically recognize additional mental impairments as severe at step two is simply not, in and of itself, a reversible error.

The ALJ found at step two that the residual effects from Plaintiff's cerebral infarct and aneurysm were "severe" impairments and then proceeded to the following steps in the five-step analysis (Tr. 19).  This finding arguably encompasses the disorders that Plaintiff avers were wrongfully omitted at step two – that is, cognitive disorder and borderline intellectual functioning.  The ALJ also incorporated Dr. Brundage's ultimate assessment (*i.e.*, that Plaintiff retained the ability to perform "unskilled work" (Tr. 284)) into the RFC, by concluding that Plaintiff was limited to "simple, unskilled work" (Tr. 20).  As to Plaintiff's alleged affective disorder, the ALJ's failure to recognize this impairment as severe is understandable, given that the medical record contains virtually no record of treatment for such a condition. Plaintiff was prescribed Prozac for depression in November 2007 (Tr. 315).  In July 2008, Plaintiff reported

-12-

that she was not taking Prozac because she did not need it; she stated that she had a good mood, was socially active, and had no suicidal thoughts (Tr. 304).

In sum, the ALJ's failure at step two to not specifically state that Plaintiff had other severe mental impairments – beyond the "residual effects" from her cerebral infarct and aneurysm – is not reversible error and Plaintiff's argument to the contrary is not well-taken. Similarly, the undersigned concludes that the ALJ's hypothetical question properly took into account Plaintiff's mental impairments, as found by the ALJ to be credible. Thus, there is no basis for overturning the ALJ's decision, which the undersigned finds is supported by substantial evidence.

### 2.    The ALJ Did Not Err At Step Three

Plaintiff next argues that the ALJ erred at step three by not specifically discussing whether Plaintiff met or medically equaled additional listed impairments, in particular listings 12.02 (organic mental disorders), 12.04 (affective disorders) and 12.05 (mental retardation). Plaintiff's brief, however, contains no argument or discussion as to how Plaintiff actually met or equaled any of those three listings. Plaintiff's only argument is that the ALJ should have discussed certain findings of Dr. Brundage, specifically the findings that Plaintiff suffered from "moderate" restrictions in three domains – concentration, persistence and pace; social functioning; and activities of daily living (Pl.'s Br. at 7-9; Tr. 296).[4]

This argument is not well-taken. Without evidence of repeated episodes of decompensation or evidence of at least two "marked" impairments, the Paragraph B criteria for listings 12.02, 12.04, and 12.05 could not have been met. *See Blasko v. Commissioner of Social*

---

[4] The mere fact that the ALJ did not discuss every element of those reports is not, in and of itself, reversible error. *See, e.g., Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) (The Secretary need not address every piece of evidence in the record).

*Sec.,* Case No. 09-13471, 2010 WL 5129061 *7 (E.D. Mich. Sept. 15, 2010).  Thus, even if the

ALJ expressly included Dr. Brundage's findings (*i.e.*, "moderate" restrictions in three domains)

in his step three finding, it could not have resulted in a finding that Plaintiff met or equaled a

listed impairment since those listing require "marked" limitations or repeated episodes of

decompensation.  Dr. Brundage found no "marked" limitations in any area and no repeated

episodes of decompensation, each of extended duration (Tr. 296).  Plaintiff makes no additional

argument as to how she allegedly met or medically equaled any of these listings.  Simply put,

Plaintiff has not demonstrated that the ALJ erred at step three of the process.

### 3.      The ALJ Did Not Err In Assessing Plaintiff's Credibility

Finally, Plaintiff claims that the ALJ did not sufficiently articulate the reasons why he

discounted Plaintiff's credibility (Pl.'s Br. at 9-10).  Plaintiff's motion for summary judgment,

however, does not make any specific arguments or point to any exhibits in the record indicating

how exactly the ALJ erred in assessing Plaintiff's credibility.

This Court does not make its own credibility determinations.  *See Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 Fed.

App'x. 521, 528 (6th Cir. 2006).  The Court cannot substitute its own credibility determination

for the ALJ's.  The Court's "review of a decision of the Commissioner of Social Security, made

through an administrative law judge, is extremely circumscribed ...."  *Kuhn v. Comm'r of Soc.*

*Sec.*, 124 Fed. App'x. 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding

the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial

evidence" standard.  "Claimants challenging the ALJ's credibility determination face an uphill

battle."  *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x. 485, 488 (6th Cir. 2005).  "Upon

review, [the court must] accord to the ALJ's determinations of credibility great weight and

deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."   *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

Furthermore, an ALJ's failure to include detailed reasons in a credibility determination may constitute harmless error if the record demonstrates that the claimant had a sufficient opportunity to voice his subjective complaints and if the record shows that the ALJ took those complaints into account. *See, e.g., Spicer v. Apfel*, 15 Fed. App'x. 227, 234 (6th Cir. 2001) (the court found that such a harmless error existed when the ALJ took into account the claimant's subjective accounts of his pain on the one hand, and the objective medical evidence on the other, and concluded that the claimant was exaggerating his complaints of pain).

Faced with Plaintiff's subjective accounts of pain on the one hand and the objective medical evidence on the other, the undersigned concludes that the ALJ was justified in determining that Plaintiff's subjective complaints were exaggerated and not credible.  Again, Plaintiff has not pointed to any evidence in the record suggesting otherwise.  Accordingly, this Court simply cannot conclude that the ALJ's adverse credibility determination was unsupported by substantial evidence.  *See Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 2012 WL 372986, at *5 (6th Cir. Feb.7, 2012) (approving credibility determination when ALJ "did not misconstrue facts in the record or overlook other significant evidence").  Therefore, the ALJ's credibility determination is within the "zone of choice" afforded decision-makers and should not be disturbed by this Court.  *Mullen*, 800 F.2d at 545.

III.    **RECOMMENDATION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  March 9, 2012

-16-

_Certificate of Service_

_I hereby certify that a copy of the foregoing document was served on the parties of record on this date, March 9, 2012, by electronic and/or first class U.S. mail._

_s/Melody R. Miles_
_Case Manager to Magistrate Judge Mark A. Randon_
_(313) 234-5542_